UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| BRANDON MCFARLANE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 4:15-cv-00176-SEB-DML |
| | ) | |
| MIKE CAROTHERS, Jackson County Sheriff, | ) | |
| | ) | |
| Defendant. | ) | |

## Report and Recommendation on
## Motion to Certify Class (Dkt. 22) and
## <u>Motion to Appoint Class Counsel (Dkt. 24)</u>

Plaintiff Brandon McFarlane has brought this action on his own behalf and on behalf of the following proposed class:

> Individuals who, from December 10, 2013 to the present, were incarcerated in the Jackson County Jail, whom [sic] had been arrested without a warrant, and were then held more than 48 hours following the detention and arrest, without receiving a timely judicial probable cause determination.

He has moved for certification of the above class under Fed. R. Civ. P. 23(a) and 23(b)(2) and (b)(3). (Dkt. 22)[1] His counsel also seek appointment as class counsel (Dkt. 24). The defendant, the Jackson County Sheriff ("Sheriff"), opposes

---

[1] His brief in support of class certification asserts that certification is also appropriate under Rule 23(b)(1), but he has not developed that argument. In any event, the court is unconvinced that Rule 23(b)(1) applies to the circumstances alleged.

class certification.[2] The parties have briefed both motions, and the district judge referred the motions to this magistrate judge for a report and recommendation as to their disposition. (Dkt. 48) The magistrate judge held a hearing on the motions on February 2, 2017, and took them under advisement. The magistrate judge now recommends that the court GRANT the motion for class certification and GRANT the motion to appoint class counsel.

## Factual Background[3]

Brandon McFarlane alleges that he was arrested without a warrant on January 5, 2015, at 11:57 a.m., was booked into the Jackson County Jail at 1:00 p.m., and was detained there until his release on January 7, 2015, at approximately 3:24 p.m. He neither received a probable cause determination nor was released within 48 hours of his arrest. According to his counsel's review of the Jackson County Jail records for the two years preceding the filing of the complaint, between forty and fifty individuals also were not afforded a probable cause determination within 48 hours of their arrests without a warrant.

---

[2] The defendant does not oppose appointment of class counsel if certification is granted.

[3] The Seventh Circuit Court of Appeals has held that nothing in Rule 23 requires the district court to accept the allegations of the complaint as true. *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 675-76 (7th Cir. 2001). However, except where noted, the parties do not dispute these background facts. Additional facts are included in the Analysis section of this Report and Recommendation as necessary.

Also of significance to the class certification motion, this action was filed on December 10, 2015, nearly eleven months after Mr. McFarlane was released from the Jackson County Jail.

## Analysis

The United States Supreme Court held, in *County of Riverside v. McLaughlin,* 500 U.S. 44, 57 (1991), that the Fourth Amendment is violated when an arrested individual does not receive a probable cause determination within 48 hours unless the "government [demonstrates] the existence of a bona fide emergency or other extraordinary circumstance." Mr. McFarlane maintains that the Sheriff "had unconstitutional and/or constitutionally defective policies, practices, procedures, and/or customs (or policies of omission) to ensure that arrestees would not be held in the Jail for more than 48 hours following an arrest without a warrant, unless they had received a timely judicial probable cause determination." (Complaint ¶ 7) Mr. McFarlane seeks, individually and on behalf of the class he proposes to represent, "declaratory/injunctive relief and [ ] compensatory damages available under 42 U.S.C. § 1983, [and] attorney's fees and costs."

A class action may be certified only after a rigorous examination of whether the requirements of Federal Rule of Civil Procedure 23 have been met. *Bell v. PNC Bank, N.A.,* 800 F.3d 360, 373 (7th Cir. 2015). The party seeking class certification has the burden of demonstrating that the class and its representative meet the requirements of Rule 23(a) and one of the subsections of Rule 23(b). *See Retired*

*Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584 (7th Cir. 1993) (burden of demonstrating class certification is appropriate is on its proponent). The Rule 23(a) requirements have been succinctly summarized as numerosity, commonality, typicality, and adequacy of representation. *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 349 (2011). As noted, Mr. McFarlane contends that certification is proper under both Rule 23(b)(2) and Rule 23(b)(3). The former authorizes certification where:

> **(2)** the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

Rule 23(b)(3) provides for certification when:

> **(3)** the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> **(A)** the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> **(B)** the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> **(C)** the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> **(D)** the likely difficulties in managing a class action.

**A. The requirements of Rule 23(a) are satisfied.**

1. Numerosity

Mr. McFarlane points out that the proposed class includes at least 49 individuals, based on counsel's review of jail records for the two years preceding the

4

filing of this case. Because the proposed class definition extends to "the present," it is possible that number is higher. The Sheriff points out, however, that at least three of the putative class members received timely probable cause determinations and that at least ten are fugitives with outstanding warrants. The plaintiff concedes the first point but argues that there is no authority for excluding individuals with outstanding warrants from the class.

The court agrees that the Sheriff has not demonstrated at this point that the "fugitive disentitlement doctrine" always bars class membership. And, in any event, the court finds—whether this class ultimately numbers in the thirties, forties, or fifties—that joinder of all members is impracticable. *E.g., Paper Systems, Inc. v. Mitsubishi Corp.,* 193 F.R.D. 601, 605 (E.D. Wis. 2000) (small classes less than 40 people can satisfy numerosity when other factors, such as the unlikelihood individual members would find it practical to bring their own suit, make joinder impracticable).

    2. Commonality and Typicality

The pivotal factual question common to each of the class members will be whether he or she was, after being arrested without a warrant, detained for more than 48 hours without a probable cause determination. And the pivotal legal question is also common to each class member: Did that detention violate the

Fourth Amendment? These questions apply to Mr. McFarlane's case, and his claims are in this way typical of those of the class.[4]

      3. Adequacy

The Sheriff does not challenge the adequacy of proposed class counsel, but he does challenge Mr. McFarlane's adequacy as a class representative. That challenge is two-fold. First, the Sheriff maintains that Mr. McFarlane has never had standing to bring a claim for injunctive or declaratory relief. As discussed below, that argument is correct, but it does not make Mr. McFarlane an inadequate representative for Rule 23(a) purposes because injunctive relief cannot be obtained in this case on a classwide basis anyway.[5]

Second, the Sheriff argues that Mr. McFarlane is not an adequate class representative because he himself suffered no damages as a result of the alleged over-detention. He constructs that argument based on the following factual assertions: (1) the court ultimately did find (at his initial hearing on January 13, 2015) that Mr. McFarlane's arrest was supported by probable cause; (2) the applicable bond schedule for his charged offense prescribed bond of $1505.00; (3) Mr. McFarlane could not have afforded to post bond if it had been set in that amount; (4) because Mr. McFarlane had not received a probable cause

---

[4] The Sheriff argues that Mr. McFarlane's claims are not typical of those of the class because he suffered no damages. The court will address that argument below in connection with adequacy.

[5] There is no basis for the court to assume that *any* identifiable class member would have standing to seek injunctive relief, for the reasons explained in section B of this Analysis.

determination within 48 hours, the Sheriff released him about 51.5 hours after his arrest; and (5) the sentencing judge gave Mr. McFarlane fifteen days' credit for time served on his sentence even though he had actually been incarcerated only 51.5 hours.

The court finds several problems with the Sheriff's argument. The most fundamental is that he presented no evidence to support most of these factual assertions. The Sheriff did not provide this court a bond schedule.[6] He did not present evidence that a judge has no discretion to impose a lesser (or no) bond amount. He did not establish that the prosecutor requested or that the judge ever set bond in the scheduled amount or in any amount. Indeed, when Mr. McFarlane did have his initial hearing on January 13, 2015, the court did not impose a bond, but allowed him to continue release on his own recognizance. He has not shown that the "time served" credit Mr. McFarlane received upon sentencing was based solely on his detention on the particular charge for which he had been arrested on January 5. The only document the magistrate judge could find on her own (the Sheriff didn't cite anything in his brief) refers to the terms of the sentence as consecutive to those in another case for which Mr. McFarlane had been separately incarcerated (36D01-1503-CM-248). It is not clear whether the credit he was given was for time served cumulatively for the two cases.

---

[6] The Sheriff did present an assertion in the jail commander's affidavit that the bond schedule provides for bond in that amount. *See* Dkt. 28-2.

So the factual predicate for the Sheriff's "no damages" argument is lacking. Beyond that, his argument rests on a narrow view of damages. According to the Sheriff, Mr. McFarlane wasn't injured on January 7 when he was held without a hearing, because if he'd had a timely hearing, he would have been taken right back to jail anyway (because probable cause would have been found and he would have been unable to make bail). Defense counsel argued at the hearing that the only persons who can be damaged by over-detention are (1) those who ultimately receive findings of no probable cause or (2) those for whom probable cause is found but who can afford to bond out. But absent a bona fide emergency or other extraordinary circumstance, Mr. McFarlane had the Fourth Amendment right to his liberty at no later than 1:57 p.m. on January 7. He was instead incarcerated. The parties will quarrel over the extent to which Mr. McFarlane was damaged, but the Sheriff has not on this record eliminated the *fact* of damage. Moreover, the court does not accept the Sheriff's contention that getting credit at sentencing for "time served" erases the fact of damage. By this reckoning, a person arrested without a warrant and who sits in jail for weeks or months without seeing a judge is not damaged so long as he or she gets credit for that time at sentencing.

The Sheriff cites the Seventh Circuit's decision in *Bridewell v. Eberle*, 730 F.3d 672 (7th Cir. 2013), in support of his damages arguments, but *Bridewell's* holding doesn't extinguish a damages claim in this case. It does, though, warrant careful examination. Ms. Bridewell was arrested without a warrant on a murder charge. She did not receive a probable cause determination for 63 hours. The

8

district court granted summary judgment against her on her over-detention claim after determining that her exclusive remedy for damages was encompassed by her membership in a class action challenging Chicago's alleged repeated violations of the Supreme Court's *City of Riverside* rule. The majority of the Seventh Circuit panel determined that it didn't need to reach the propriety of that determination, because she hadn't been injured: the record demonstrated that Ms. Bridewell *was not entitled to bail* on the murder charge. As Judge Wood pointed out in her concurring opinion, "*Riverside* is concerned not only with the obviously innocent, but also with those who might be entitled to bail." 730 F.3d at 680. There is no contention in this case that Mr. McFarlane, who had been arrested on charges of contributing to the delinquency of a minor and violating a protective order, was not entitled to bail.

And as to the argument that there's no harm, no foul when the plaintiff is ultimately given credit in sentencing for the period of detention (including over-detention), the *Bridewell* majority's comment that the plaintiff "[could] not receive damages for time spent in custody on a valid sentence" does not directly apply here. *Id.* at 677 (citing *Ramos v. City of Chicago*, 716 F.3d 1013, 1019-20 (7th Cir. 2013)).

First, both *Bridewell* and *Ramos* rest on the plaintiff's failure to respond to the defendant's damages argument. Second, *Bridewell* and *Ramos* are factually dissimilar. Mr. Ramos was arrested on a residential burglary charge. At the time of that arrest, he was out on bond on a weapons charge. When he was arrested on the burglary charge, his bond on the weapons charge was revoked, and he was

9

detained on the weapons charge. He was later convicted on the weapons charge and was given credit at sentencing for his pretrial detention on the weapons charge. He was acquitted on the burglary charge and brought claims for malicious prosecution on the burglary charge, maintaining that he suffered damages as a result of the wrongful burglary charge based on the time he had spent in jail. But the Seventh Circuit rejected that damages claim because his jail time "was attributable entirely to the weapons charge and conviction, and therefore cannot form the basis for damages for his residential burglary claim because he would have served that time regardless of the burglary charge." 716 F.3d at 1019. Similarly, Ms. Bridewell was on release on bond on a drug distribution charge at the time she was arrested for murder, which led to the revocation of her bond on the earlier charge. Her period of alleged over-detention on the murder charge overlapped with her detention on the distribution charge, and she received credit for that pretrial detention when she was sentenced on the distribution charge—not on the murder charge at issue in the Seventh Circuit's decision.

These are the facts that led the Seventh Circuit to the unremarkable conclusion that "Bridewell cannot receive damages for time spent in custody on a valid sentence." 730 F.3d at 677. In other words, the period for which she was claiming over-detention damages was a period during which she would have been incarcerated anyway. She later received credit at the sentencing. And so it was with Mr. Ramos as well. The results in those cases should not be applied to Mr.

10

McFarlane, whose period of over-detention was attributable to nothing other than the over-detention itself.

Mr. McFarlane's alleged damages relate solely to the charge for which he was arrested and being held. Cognizant of the principle underlying the Supreme Court's decision in *Carey v. Piphus*, 435 U.S. 247 (1978), that constitutional injuries don't just "come out in the wash" and can produce nominal or actual damages (for distress, for example), the court will not read *Bridewell* and *Ramos* expansively but will confine them to their (distinguishable) facts. *See Bridewell*, 730 F.3d at 681 (Wood, J. concurring).[7]

For these reasons, the court rejects the Sheriff's contention that Mr. McFarlane is an inadequate class representative because he has no damages.

### B. The requirements for certification under Rule 23(b)(2) are not met.

The Sheriff argues that Mr. McFarlane lacks standing to seek injunctive or declaratory relief on his own behalf or on behalf of a class, thereby making certification under Rule 23(b)(2) inappropriate. The court agrees.

---

[7] At the hearing, counsel for the Sheriff acknowledged the unlikelihood that an over-detained individual can file a complaint or obtain class certification before the period of detention without a hearing ends, thereby, according to the Sheriff's argument, nearly always precluding injunctive relief. In response to the court's question about how, under these circumstances, an unconstitutional policy, procedure, or custom of over-detention could be remedied, he responded that damages claims would be a deterrent. But if the damages argument the Sheriff advances here were accepted, it would eviscerate that remedy. A significant number of arrestees are ultimately convicted (through plea or otherwise), and "time served" during pretrial detention is routinely credited in sentencing.

As the Supreme Court repeated in *City of Riverside*, "At the core of the standing doctrine is the requirement that a plaintiff 'allege personal injury fairly traceable to the defendant's unlawful conduct and likely to be redressed by the requested relief.'" 500 U.S. at 51 (citations omitted). To have standing for injunctive relief, the plaintiff must be threatened with concrete and particularized injury; the threat must be actual and imminent, not conjectural or hypothetical. And ordinarily, the plaintiff must maintain this stake in relief throughout the pendency of the case. *See, e.g.*, *United States Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980) (case becomes moot when the parties lack a legally cognizable interest in the outcome).

As noted earlier, Mr. McFarlane filed this action about eleven months after his alleged over-detention ended. He argues, though, that he does have standing to seek injunctive or declaratory relief based on either or both of two related doctrines established by the Supreme Court. First, he argues that his claim is "capable of repetition yet evading review." Second, he maintains that his claim is "inherently transitory." A discussion of these two doctrines and their analytical framework is necessary.

The Supreme Court has recognized that some claims are "capable of repetition yet evading review." *See Geraghty,* 445 U.S. at 398. If the plaintiff's claim satisfies this standard, then he has standing to obtain relief, even if the circumstances that prompted the suit are no longer present. Mr. McFarlane is certainly correct that the problem of over-detention, if attributable to a policy or

12

practice (or lack thereof) as he alleges, is likely to repeat and would generally involve a duration short enough that final adjudication of a claim will not be possible during a period of over-detention. But Mr. McFarlane has ignored critical components of the doctrine.

First, the "capable of repetition yet evading review" doctrine applies where a claim is so transitory that a plaintiff has a personal stake in the litigation when it begins but, because of the transitory nature of the claim, loses that personal stake while the litigation is pending. *See id.* But Mr. McFarlane lacked a personal stake in injunctive relief when he filed this case; he had been released many months before.

Second, the doctrine applies only when repetition is "likely to embroil the *same parties* to the dispute." *Holmes v Fisher*, 854 F.2d 229, 232 (7th Cir. 1988) (emphasis added). As the Supreme Court explained, because the plaintiff faces a reasonable likelihood of being in that same situation again, "vigorous advocacy can be expected to continue." *Geraghty*, 445 U.S. at 398. The capable of repetition yet evading review doctrine therefore requires that Mr. McFarlane show that it is reasonably likely that *he* will again be subject to the unconstitutional practice he challenges. *City of Los Angeles v. Lyons*, 461 U.S. 95, 110 (1983). Mr. McFarlane's counsel suggests Mr. McFarlane may get arrested in Jackson County again. That's not enough. For one thing, it's been over two years since the arrest at issue in this case, and there's no suggestion that Mr. McFarlane has been arrested in Jackson County since then—let alone that it's been without a warrant and that he's been

13

detained more than 48 hours without a probable cause determination. More important, the Seventh Circuit has rejected this very argument. In *Robinson v. City of Chicago*, 868 F.2d 959 (7th Cir. 1989), the plaintiff had challenged the constitutionality of an investigative detention policy employed by the City of Chicago (holding misdemeanor arrestees until their fingerprints cleared). The court held that the possibility that the plaintiffs would be subjected to that practice again was too speculative. *Id*. at 966. *See also Knox v McGinnis*, 998 F.2d 1405, 1414-15 (7th Cir. 1993) (finding that plaintiff had not made a reasonable showing that he would again be subject to prison officials' allegedly illegal use of certain restraints while transporting segregation prisoners). The capable of repetition yet evading review doctrine does not supply Mr. McFarlane the required standing for injunctive relief.

The "inherently transitory" doctrine serves the similar purpose of ensuring the litigants' continued stake in the relief sought in the case, but it has a somewhat different genesis and application. The inherently transitory doctrine developed in the class action context and grew out of the recognition that, though a named class representative may have had standing when the complaint was filed, the conduct complained of, because of its transitory nature, is unlikely to persist long enough for a court to rule on class certification. And, unlike the capable of repetition yet evading review doctrine, the inherently transitory doctrine does not require the named plaintiff to show that the conduct complained of is likely to be repeated as to

him or her.[8]  Rather, the plaintiff must show that "(1) it is uncertain that a claim will remain live for any individual who could be named as a plaintiff long enough for a court to certify the class; and (2) there will be a constant class of persons suffering the deprivation complained of in the complaint." *Olson*, 594 F.3d at 582 (*citing Gerstein v. Pugh*, 420 U.S. 103, 110 (1975)).  The Supreme Court has noted in similar instances that the class certification can be said to "relate back" to the filing of the complaint.  *Swisher v. Brady*, 438 U.S. 204, 213 n.11 (1978).

Courts have consistently and frequently employed the inherently transitory doctrine to supply continued standing for injunctive relief in class cases involving challenges to conduct exactly like or very similar to the conduct challenged by Mr. McFarlane.  The Supreme Court authorized its application in the pivotal liability decision applicable in this case—*City of Riverside v. McLaughlin.  See also, e.g., Olson,* 594 F.3d 577 (challenge to jail procedures).  But Mr. McFarlane and the proposed class cannot rely on this doctrine for the simple reason that Mr. McFarlane never—at any time beginning with the filing of his complaint—had standing to seek injunctive relief.  Because he filed this case months after his release, his claim for injunctive relief was, in the words of the Seventh Circuit in *Holmes v. Fisher*, "dead on arrival, moot the day the complaint was filed."  854 F.2d at 232.  The court in *Holmes* further explained, "[t]o permit the certification of a class headed by a 'representative' who did not have a live controversy with the

---

[8]  The Seventh Circuit made this distinction clear in *Olson v. Brown*, 594 F.3d 577, 583 (7th Cir. 2010).

15

defendant on the day the suit began would be to jettison the last vestiges of the case-or-controversy requirement in class actions." *Id*. at 233. *See also Robinson*, 868 F.2d at 968 ("[a] representative's claim must at least be live when he files the case, even if the representative's case becomes moot before the class is certified") (citing *Geraghty*).

Because the named plaintiff in this case has no standing to seek declaratory or injunctive relief—the type of relief contemplated by Rule 23(b)(2)—certification under that subsection would be improper.

### C. Certification of damages claims under Rule 23(b)(3) is appropriate.

To certify a class under Rule 23(b)(3), the court must determine that issues common to the class predominate over questions affecting only individual class members and that a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy." The Sheriff advances two reasons why those standards are not met here.

First, he argues that there will be:

> many questions involving the circumstances of each individual class member involving whether they were properly held in excess of 48 hours due to a variety of external factors which might justify detention as well as whether those held in excess of 48 hours suffered injury. A major problem is that of reasonableness. 'Because reasonableness is a standard rather than a rule and because one detainee's circumstances differ from another's, common questions do not predominate and class certification is inappropriate.'

Defendant's Brief in Opposition (Dkt. 27) at p. 10 (citation omitted).

16

The Sheriff's argument is constructed on an incorrect statement of the law governing this case. In *City of Riverside*, the Supreme Court made clear that the Sheriff's liability does not hinge on whether a detention of over 48 hours was *reasonable*. The Court first explained that a judicial determination of probable cause within 48 hours of an arrest without warrant will usually comply with the law. It noted, however, that a detention of less than 48 hours may still, in an individual case, violate the law if the individual can prove that his or her probable cause determination was delayed unreasonably. 500 U.S. at 56-57. Then the Court—of great importance to the predominance issue in this case—held:

> Where an arrested individual does not receive a probable cause determination within 48 hours, the calculus changes. In such a case, the arrested individual does not bear the burden of proving an unreasonable delay. Rather, the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance.

*Id.* at 57. So at trial, the focus will not be on whether the detentions in excess of 48 hours were reasonable, but whether the Sheriff can show there was a "bona fide emergency or other extraordinary circumstance." The Sheriff has not pointed to a single identified class member whose detention beyond 48 hours can be justified in this way. At hearing, the Sheriff's counsel vaguely suggested there may be a few. That speculation, unsupported by any specific evidence, does not defeat predominance. Under the applicable legal standard, it will not be necessary for the factfinder to determine the reasonableness of each over-detention. Furthermore, the issue whether an individual was actually detained more than 48 hours can be determined on a straightforward basis, and the court has been provided no reason

to think that question will dominate. Indeed, the court expects the parties to be able to stipulate to the length of class members' detentions, as they have already done to some extent.[9]

Second, the Sheriff maintains that individualized injury and damages inquiries make the case unmanageable as a class action. The Sheriff has not explained what he means by "injury," but the court assumes he refers to the sort of analysis the Sheriff employed in arguing that Mr. McFarlane was not injured by the over-detention. For the reasons the court has already explained, it doubts that there will be so many viable challenges to the fact of injury that predominance is defeated. And as to the amount of damages, it is well-established that individualized damages inquiries do not defeat Rule 23(b)(3) certification. *See, e.g., Butler v. Sears, Roebuck and Co.,* 727 F.3d 796, 801 (7th Cir. 2013). As the case develops, the court and counsel can address an appropriate methodology for determining damages.

The court thus finds that a class should be certified under Rule 23(b)(3) for purposes of class members' claims for damages.

**D. The class definition must be modified.**

The proposed class includes individuals who were allegedly over-detained beginning two years before the filing of the complaint "to the present." When asked at the hearing what "to the present" means, Mr. McFarlane's counsel responded

---

[9] As noted earlier, the Sheriff pointed out that three of the putative class members were not detained more than 48 hours, and the plaintiff has accepted that position.

18

that the class definition encompasses individuals who are/were over-detained up to the date of judgment. Although that might be an acceptable class definition for a Rule 23(b)(2) class, it is not a viable definition for a Rule 23(b)(3) class. Because (b)(3) class members have the right to notice and an opportunity to opt out of the class, the class members must be ascertainable well before a final adjudication or settlement. The ending date for the class should be the date of class certification.

A final note regarding class definition: The proposed definition includes a grammatical error the magistrate judge cannot countenance. It will be corrected in the definition set out below.

## Conclusion

The magistrate judge recommends that the district court grant the motion for class certification (Dkt. 22) and certify the following class under Fed. R. Civ.P. 23(a) and 23(b)(3) for damages relief only:

> Individuals who, from December 10, 2013, to the date of class certification, were incarcerated in the Jackson County Jail, who had been arrested without a warrant, and were then held more than 48 hours following the detention and arrest, without receiving a timely judicial probable cause determination.

The magistrate judge further reports that she finds proposed class counsel capable of advancing the interests of the class and recommends that their motion to be appointed class counsel (Dkt. 24) be granted.

Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file objections within fourteen days after service will constitute a waiver of subsequent

19

review absent a showing of good cause for that failure. The parties should not anticipate any extension of this deadline or any other related briefing deadlines.

　　IT IS SO RECOMMENDED.

Dated: 2/9/17

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system