UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| BRANDON MCFARLANE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 4:15-cv-00176-SEB-DML |
| ) | |
| MIKE CAROTHERS, Jackson County ) | |
| Sheriff, ) | |
| ) | |
| Defendant. ) | |

# Report and Recommendation on Remand of Motion to Certify Class (Dkt. 22)

Judge Barker has remanded the plaintiff's motion for class certification to this magistrate judge for further consideration in light of the Seventh Circuit's decision in *Ewell v. Toney*, 853 F.3d 911 (2017). *Ewell* was issued after the undersigned's Report and Recommendation in favor of certification (Dkt. 51) and after Judge Barker's adoption of that Report and Recommendation (Dkt. 61). Moreover, in the defendant's view, *Ewell* further supports certain arguments he has raised in his summary judgment motion, and *Ewell* was issued after most of the parties' briefing. Given the potential impact of *Ewell* on both Rule 23 and Rule 56 issues, Judge Barker has directed me to provide at this juncture a careful and complete analysis of *Ewell*. (Dkt. 78)

1

## Background

The United States Supreme Court held, in *County of Riverside v. McLaughlin,* 500 U.S. 44, 57 (1991), that the Fourth Amendment is violated when an arrested individual does not receive a probable cause determination within 48 hours unless the "government [demonstrates] the existence of a bona fide emergency or other extraordinary circumstance." Mr. McFarlane, the named plaintiff, maintains that the defendant, Jackson County Sheriff Mike Carothers, "had unconstitutional and/or constitutionally defective policies, practices, procedures, and/or customs (or policies of omission) to ensure that arrestees would not be held in the Jail for more than 48 hours following an arrest without a warrant, unless they had received a timely judicial probable cause determination." (Complaint ¶ 7) Mr. McFarlane seeks, individually and on behalf of the class he proposes to represent, "declaratory/injunctive relief and [ ] compensatory damages available under 42 U.S.C. § 1983, [and] attorney's fees and costs."

In opposing class certification, Sheriff Carothers had argued that Mr. McFarlane is not an adequate class representative because he himself suffered no damages as a result of the alleged over-detention. The Sheriff constructed that argument based on the following factual assertions: (1) the court ultimately did find (at his initial hearing on January 13, 2015) that Mr. McFarlane's arrest was supported by probable cause; (2) the applicable bond schedule for his charged offense prescribed bond of $1505.00; (3) Mr. McFarlane could not have afforded to post bond if it had been set in that amount; (4) because Mr. McFarlane had not

received a probable cause determination within 48 hours, the Sheriff released him about 51.5 hours after his arrest; and (5) the sentencing judge gave Mr. McFarlane fifteen days' credit for time served on his sentence even though he had actually been incarcerated only 51.5 hours. The Report and Recommendation and the Order adopting it rejected those assertions as the basis for a finding that Mr. McFarlane had suffered no damages (*see* Dkt. 51, pp. 6-8; Dkt. 61, pp. 10-12), but only the legal effect of the last one needs to be examined in light of *Ewell*.

In his class certification briefing (and summary judgment briefing), Sheriff Carothers had argued that the Seventh Circuit's earlier decisions in *Ramos v. City of Chicago*, 716 F.3d 1013 (2013), and *Bridewell v. Eberle*, 730 F.3d 672 (2013), compel the conclusion that detention without a probable cause determination following an arrest without warrant for a presumptively unreasonable period under *Riverside* produces no injury when the defendant is given credit for the period of over-detention at sentencing. This court rejected that argument, reading *Ramos* and *Bridewell* more narrowly than the Sheriff urged and finding Mr. McFarlane's circumstances distinguishable.

## Analysis

The Sheriff now maintains that the distinctions the court relied upon are no longer tenable under *Ewell*. The examination of that contention should begin with an in-depth discussion of this line of cases—*Ramos, Bridewell*, and finally, *Ewell*— to supply critical analytical context, because the "general expressions" in these three cases to which Sheriff Carothers ascribes dispositive import must be "taken in

3

connection with the case in which those expressions are used." *Lilly Indus., Inc. v. Health-Chem Corp.*, 974 F. Supp. 702, 706 (S.D. Ind. 1997) (Hamilton, J.) (quoting *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 399 (1821) (Marshall, J.)).

### A. A Review of the Decisions

1. *Ramos v. City of Chicago*, 716 F.3d 1013 (7th Cir. 2013)

Mr. Ramos sued the City of Chicago and five of its police officers under section 1983 for false arrest and malicious prosecution. He had been arrested for, charged with, and acquitted of residential burglary. 713 F.3d at 1014. At the time of his September 27, 2007 arrest,

> Ramos had previously been arrested for a weapons violation and charged with six counts of aggravated unlawful use of a weapon . . . and one count of unlawful use of a weapon by a felon . . . . He had posted bond on August 3, 2007 on the weapons charges, but that bond was revoked when he was charged with residential burglary. Accordingly, Ramos remained incarcerated from the time of his arrest until his acquittal on the residential burglary charge on June 5, 2008, at which time his bond was reinstated. On August 12, 2008, he pled guilty to one count of unlawful use of a weapon, and was sentenced to 3 years' imprisonment. The 253 days that he served from his residential burglary arrest on September 27, 2007 until the June 5, 2008 acquittal was credited as time served on his weapons conviction.

*Id.* at 1015. The district court granted summary judgment to all defendants and Ramos appealed. *Id.* at 1016.

After disposing of Ramos's false arrest claim under the Fourth Amendment (finding reasonable suspicion to support an initial stop and probable cause to support a subsequent arrest, *id.* at 1017–18), the Seventh Circuit turned to whether he had preserved a viable malicious prosecution claim under the Fourth or

Fourteenth Amendment. The district court had held that Ramos could not pursue a malicious prosecution claim under the Due Process Clause where state law provided a remedy. *Id.* at 1016; *see* 2010 WL 3732226, at *4 (op. below) (citing cases). The court of appeals accepted that ruling. *See Newsome v. McCabe*, 256 F.3d 747, 750 (7th Cir. 2001), *abrogated on other grounds*, *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017).

> The court then addressed Ramos's Fourth Amendment argument:
>
>> The theory behind such a Fourth Amendment claim is that officers who mispresent evidence to prosecutors may be held accountable for the seizure based on that misinformation. In other words, the theory is that if a person is in jail awaiting trial on charges that were approved by a prosecutor based, unknowingly, on false information from the officers, and his seizure would lack probable cause without that false evidence, that person could pursue an action against the officers.

*Ramos*, 716 F.3d at 1019. The court found it unnecessary to address the contours of that claim, though, finding that it failed because Ramos did not "identify any *seizure* that would form [its] basis . . . ." *Id.* at 1019 (emphasis added). Put differently, "Ramos failed to make any arguments below that his seizure (his detention for 253 days pending his acquittal) was attributable to the allegedly false statements by officers." *Id.* Rather, the seizure (253 days' detention) was attributable to the bond revocation in Ramos's unlawful use of weapons case. "[A]lthough his bond was revoked because of the arrest for residential burglary, his detention was for the unlawful use of a weapon charges. . . . It is not a seizure related to this case at all." *Id.*

5

The court held that the same observation defeated Ramos's damages. "The jail time was attributable entirely to the weapons charge and conviction, and therefore cannot form the basis for damages for his residential burglary claim because he would have served that time regardless of the burglary charge." *Id.* The court rejected Ramos's argument at summary judgment from an old Illinois case holding that damages are presumed in detention cases. "Whether or not this precedent from 1894 still holds, any presumption of damages is surely defeated in a case where all of the time served is ultimately credited toward an unrelated weapons violation." *Id.* at 1020. On appeal, Ramos had waived further argument by failing to raise the issue. *Id.* The Seventh Circuit accordingly affirmed the district court's grant of summary judgment for the defendants. *Id.*

2. *Bridewell v. Eberle,* 730 F.3d 672 (7th Cir. 2013)

Ms. Bridewell sued the City of Chicago and two of its police detectives under section 1983 for false arrest, unlawful detention, malicious prosecution, and for intentional infliction of emotional distress under state law. 730 F.3d at 675.

Bridewell had been arrested at the scene of a suspected murder and charged with the crime. *Id.* at 674–75. At the time of her arrest and charge, she was already under indictment for possession of cocaine with intent to distribute but had been released on bail. *Id.* at 675. After sixty-three hours' detention,[1] Bridewell was brought before a magistrate, who found probable cause to hold her on the murder

---

[1] The opinion below noted Bridewell had been *interrogated* for sixty-three hours. 2012 WL 2458548, at *1.

6

charge and revoked her bail on the drug charges. *Id.* at 676. After *three years* in custody, the murder charge was dismissed and Bridewell pleaded guilty to simple possession of cocaine. She was sentenced to "time served[.]" *Id.* at 675.

Bridewell's unlawful detention claim was based on the fifteen hours beyond the presumptively reasonable 48-hour period preceding a probable cause determination. *Id.* at 676. The district judge held that Bridewell's exclusive remedy for the over-detention lay in the class settlement for repeated *Riverside* violations reached in *Dunn v. City of Chicago*, 231 F.R.D. 367 (N.D. Ill. 2005), and granted summary judgment to the defendants on this claim. *Bridewell*, 730 F.3d at 676. Bridewell appealed.

After finding her arrest to have been supported by probable cause, *id.* at 675, the Seventh Circuit rejected Bridewell's unlawful detention claim for failure to show injury from the over-detention caused by the named defendants:

> The state judge concluded that probable cause existed to find that [Bridewell] had [shot the suspected murder victim] and ordered her to be held—and also revoked her bail on the drug-distribution charge. The Supreme Court observed in *Riverside* that the reason for requiring suspects in custody to be taken before a magistrate promptly is to ensure that detention based on "incorrect or unfounded suspicion" is short-lived, 500 U.S. at 52, and that persons properly arrested but entitled to bail can be released promptly. Events showed that Bridewell had been arrested properly and was not entitled to release on bail. If the police had complied with *Riverside,* she would have learned these things a little sooner but would have remained in jail. This means that she was not injured by the delay.

*Id.* at 676–77.

7

Then, as in *Ramos*, the court held that the same observation defeated Bridewell's damages:

> What's more, Bridewell cannot receive damages for time spent in custody on a valid sentence. See *Ramos v. Chicago,* 716 F.3d 1013, 1019–20 (7th Cir.2013). She received credit, against her sentence for possessing cocaine, for every hour she spent in custody following her arrest on the charge of murder. Defendants pointed this out in their appellate brief, and Bridewell's reply brief ignores the subject.

*Id.* at 677.  The district court's summary judgment for defendants was affirmed. *Id.* at 679.

Judge Wood concurred in the judgment. *Id.* As to Bridewell's unlawful detention claim, Judge Wood noted that an unreasonable delay, even for a plaintiff held on probable cause and not entitled to bail, could constitute compensable injury caused by denial of the "orderly procedure" to which she is entitled. *Id.* at 681. Accordingly, Judge Wood noted, nominal damages and compensatory damages flowing from the denial of the hearing itself ought to be available. "With respect to the detention itself, as a practical matter [Bridewell] is the beneficiary of the *Dunn* litigation, which dealt with the City's careless application of *Riverside*." *Id.* Judge Wood agreed, however, that Bridewell "cannot recover anything for time spent in custody that was credited to a lawful sentence." *Id.*

3.  *Ewell v. Toney*, 853 F.3d 911 (7th Cir. 2017)

Ms. Ewell sued a district attorney and two police detectives under section 1983 for false arrest and unlawful detention.  Ewell's sister had killed her husband and Ewell had helped. During the course of the police investigation, on November

8

20, 2013, Ewell was arrested and transported to the local police station "sometime between 2 and 4 p.m." 853 F.3d at 915. Two days later, at 4:15 p.m., November 22, 2013, a magistrate found probable cause to detain Ewell and denied bail pending a court appearance. *Id.*

Four days later, on November 26, 2013, Ewell's public defender filed a *habeas corpus* petition in state court.

> The county judge agreed that the *Riverside* determination was outside the 48-hour window, and so the burden shifted to the state to show extraordinary circumstances. The state, the judge decided, satisfied that burden, given the activity related to the case on the court calendar. The judge stated that although [Defendant detective] had contacted him earlier to sign the [probable cause] statement, he (the judge) could not have diligently reviewed and signed it any earlier than he did. The judge then reiterated his conclusion that probable cause existed to detain Ewell. Immediately thereafter, the court held a bond hearing and set a $50,000 cash bond for Ewell. . . . On December 2, 2013, [Defendant prosecutor] requested Ewell's release, and the state court ordered her release that same day. At that point, the state had filed no charges against her; in all, she had spent 12 days in custody.

*Id.* at 915.

Three years later, in 2016, the state charged Ewell with two felonies and two misdemeanors in connection with her sister's husband's death. *Id.* at 916. Ewell was convicted on three of the charges and sentenced to two years' incarceration. *Id.* Plaintiff's twelve-day detention in 2013 was credited against her 2016 sentence. *Id.* at 917.

Ewell filed a civil suit in 2014, two years before being charged, alleging false arrest and unlawful detention. *Id.* at 915. The district judge dismissed her complaint for failure to state a claim and on the basis of qualified immunity. *Id.* Ewell appealed that dismissal. She was charged, convicted, and sentenced in the criminal case, all while her civil appeal was pending. *Id.* at 916.

After disposing of the defendants' argument for *Younger* abstention, *id.* at 916–17, the Seventh Circuit turned to "another preliminary obstacle" to Ewell's claims: "a section 1983 plaintiff may not receive damages for time spent in custody, if that time was credited to a valid and lawful sentence." *Id.* at 917 (citing *Bridewell* and *Ramos*).

Then, as in *Ramos* and *Bridewell*, the court held that Ewell had failed to allege injury caused by the named defendants. First, Chief Judge Wood noted that, at the delayed probable cause hearing on November 22, 2013, "[t]he state court judge found probable cause [to hold Ewell] and denied bond pending a further hearing . . . . Had the judicial determination occurred earlier, the outcome would have been the same: Ewell would not have been released at that point." *Id.* at 918. Accordingly, as in *Bridewell*, Ewell "could not demonstrate that she was injured by the presumptively unreasonable delay . . . ." *Id.* Second, the court held that any injury for which Ewell might be entitled to nominal damages[2] was not caused by the named defendants:

---

[2] Recall Judge Woods's concurrence in *Bridewell* noting that the deprivation of a timely hearing could itself give rise to nominal damages.

10

> The judge indicated that although [Defendant detective] had contacted him to review and sign the probable cause statement within the 48-hour . . . , the judge turned him away and indicated that he could not possibly have made the determination any sooner than he did. This suggests that the delay of longer than 48 hours was not a result of the [Defendant] detectives' actions. . . . On these facts, she has not stated a *Riverside* claim against the defendants she names.

*Id.*

Accordingly, the district court's dismissal of the complaint was affirmed. *Id.* at 920.

### B. Further Consideration

The Sheriff's assertion that Mr. McFarlane's claim is defeated by the Seventh Circuit's general statement that there can be no injury when a period of over-detention is credited at sentencing is fundamentally flawed. First, it divorces that statement from the facts underlying the decisions in those cases—undisputed facts that demonstrate causation was lacking at two levels. Second, it ignores the significant policy concerns raised by a broader application of that statement.

1. Unlike this case, in *Ramos*, *Bridewell*, and *Ewell*, the period of alleged over-detention was not caused by the defendants' conduct.

The discussion above shows that in each of the cases on which the Sheriff relies, the plaintiff would have remained in custody even if she or he had had a timely hearing. Mr. Ramos was detained for 253 days,[3] but that was because his arrest on the subject burglary charge resulted in a revocation of his bond on an

---

[3] *Ramos* was not an over-detention case. Rather, Ramos had sued for damages for false arrest.

11

earlier weapons charge. As the Seventh Circuit explained, "he would have served that time regardless of the burglary charge." 716 F.3d at 1019. Ms. Bridewell was detained for fifteen hours beyond the presumptively reasonable 48 hours, but that was because her bond in an earlier drug case was revoked when she was arrested for murder. In other words, if she had received a probable cause hearing within 48 hours of her arrest, she still would have remained in jail. Finally, the outcome for Ms. Ewell would have been the same had she been provided a timely probable cause determination. That is because, when she did receive a determination around hour 50, the judge found probable cause and *denied her bail*.

Mr. McFarlane's circumstances were entirely different. Unlike Mr. Ramos and Ms. Bridewell, his detention had nothing to do with an earlier charge, and his period of alleged over-detention is attributable to nothing other than the failure to obtain a probable cause determination soon enough following his arrest. There is no contention in this case that Mr. McFarlane, who had been arrested on charges of contributing to the delinquency of a minor and violating a protective order, was not entitled to bail. And unlike Ms. Ewell, who would have remained in custody even if her hearing had been held earlier, Mr. McFarlane's outcome was demonstrably different: When he did get his hearing, he was released (and without even posting bond).

Moreover, causation in *Ramos*, *Bridewell*, and *Ewell* was lacking on another, related level: the Seventh Circuit found that any injury the plaintiffs may have sustained, even a nominal one, was not caused by the defendants they had sued. In

12

*Ramos* and *Bridewell*, that conclusion flowed from the fact that the plaintiffs had sued defendants connected to their subsequent arrests when their detentions were attributable to *earlier* charges. And in *Ewell*, the Seventh Circuit found that the named defendants had attempted to present the judge with probable cause within the 48-hour period but that the *judge* was not able to review it. 853 F.3d at 918.

In sum, none of these three decisions of the Seventh Circuit—nor any other of which this court is aware—has foreclosed a damages remedy for provable constitutional injury caused by named defendants. Mr. McFarlane's allegations, supported by evidence of record, are that but for Sheriff Carothers's failure to present his case for a probable cause determination in a timely manner, he would have been free (or had a bail opportunity)[4] rather than in custody. Applying as an expansive principle—unmoored from the pivotal facts that gave rise to it—that credit at sentencing for time served always erases an otherwise proven constitutional injury, would in this judge's view create an unwarranted extension of

---

[4] This judge previously rejected—on a factual basis—the Sheriff's argument that Mr. McFarlane wasn't damaged because he wouldn't have been able to afford bail. *See* Dkt. 51, p.7. And in any event, the applicable case authorities speak of entitlement to bail, not ability to afford it. Thus, the Sheriff's argument in this regard should be rejected for legal reasons as well. *See Clay v. Cook Cty.*, 2017 WL 878451, at *4 (N.D. Ill. Mar. 6, 2017) ("In *Bridewell*, the Seventh Circuit found that the plaintiff did not suffer a cognizable injury because she was properly arrested for murder (i.e., there was probable cause) and she 'was not entitled to release on bail.' In this case, although Plaintiff was apparently unable or unwilling to pay the $150,000 bond on the earlier robbery charges, Plaintiff,
unlike Bridewell, was 'entitled to release on bail' on those charges." (citations omitted)).

13

Seventh Circuit precedent.[5] Moreover, the plaintiffs' procedural default of their damages arguments[6] looms over *Ramos* and *Bridewell,* which supplied the "credit for time served means no damages" language cited in *Ewell*. In none of the cases has the damages issue in this case been squarely presented to the Seventh Circuit and squarely decided by it.

   2. Construing the "credit for time served" observation so expansively would be unwise as a matter of policy.

Reading the Seventh Circuit's language as broadly and literally as the Sheriff advocates suggests a rule not only unjustified by the cases, but also susceptible to abuse and incapable of consistently rational administration.

What is perhaps most troubling about a broad, literal application of the cited language urged by the defendant is the underlying assumption that time is fungible. It is not—either for human beings generally or for people accused of a crime particularly. As to the latter, it is not difficult to identify specific harms that may be suffered by a criminal defendant on the front end (during a pretrial detention) that cannot be remedied on the back end (with credit at sentencing): abrupt loss of a job, impediments to participating fully in preparation of a defense,

---

[5] It is also worth noting that the Sheriff has never clearly established that Mr. McFarlane did indeed receive credit for time served as part of his sentence on the subject charge. *See* Dkt. 51, p.7.

[6] The Seventh Circuit noted in each of these decisions that the plaintiff had failed to respond to the defendants' "no damages" arguments. *See Ramos*, 716 F.3d at 1019-20; *Bridewell,* 730 F.3d at 677.

14

disruption of family connections and responsibilities, to name a few.[7] The calculation of damages resulting from confinement can be more than a mechanical application of an hourly rate multiplied by the number of hours confined. Rather, it may look to what the plaintiff *actually* lost as a result of being confined *on those days*. The Seventh Circuit acknowledged as much in *Ramos*: "The jail time was attributable entirely to the weapons charge and conviction, and therefore cannot form the basis for damages for his residential burglary claim because he would have served *that time* [i.e., those *particular* days] regardless of the burglary charge." 716 F.3d at 1019 (emphasis added)). Indeed, the primary focus in *Ramos*, *Bridewell*, and *Ewell* is specifically on where each of those plaintiffs would have been during the particular hours and days of their periods of over-detention. And the primary rationale for the Seventh Circuit's holdings of no damages in each case is that the plaintiffs would have been in custody during those periods.

Second, viable deterrents to unconstitutional over-detentions would be significantly limited if credit at sentencing for time served always extinguishes any damages claim. Injunctive relief will frequently be unavailable, for the reasons explained in the first Report and Recommendation. *See* Dkt. 51, pp. 11-16. And

---

[7] These examples further illustrate why *Ramos*, *Bridewell*, and *Ewell* are so different from this case. Under no circumstances could any of these harms of over-detention been suffered by those plaintiffs because, as the court noted in each case, they would have remained in custody even if they had received timely probable cause determinations.

high rates of conviction, coupled with the routine practice of crediting time served at sentencing, would largely remove the deterrent effect of damages awards.[8]

Third, leaving the wrong of over-detention largely without a remedy would create a climate susceptible to abuse. A person could be held either without probable cause or else when entitled to bail or both, for an indefinite period, until she is either compelled by her circumstances to plead guilty to a crime in order to win her release, or until officials, at their leisure while their target is detained, are able to gather sufficient evidence to secure a conviction. Yet her cause of action would be extinguished so long as her unlawful detention was credited to her *per se* lawful conviction and sentence. Or the more likely consequence: the commands of *Riverside* could be routinely ignored.

Finally, the availability of a damages remedy would be made to turn on an entirely arbitrary factor: whether civil judgment preceded criminal judgment or *vice versa*. Consider *Bridewell*, for instance. There, prosecutors dropped the murder charge and waited *three years* to charge the crimes for which she was eventually convicted, and final judgment in the criminal case was entered just days after oral argument in her civil appeal. If the prosecutor had waited *four years*, or if her civil case had been resolved in *two*, no credit time would have yet been awarded, and the purported "time credited at sentencing equals no damages" rule could not have been

---

[8] Moreover, a policy that permits the sins of one actor (the Sheriff) to be entirely atoned by the conduct of a different actor (the sentencing judge) is contrary to basic tort law principles underlying section 1983 jurisprudence. *See generally Carey v. Piphus*, 435 U.S. 247, 257-58 (1978).

16

applied. That a plaintiff's recovery should turn on whether she beats the sentencing court to final judgment in her civil suit seems an irrational consequence of the rule the Sheriff advocates.

This magistrate judge concludes that *Ewell v. Toney* does not, and was not intended to, preclude a damages remedy in all cases of over-detention, so long as the plaintiff has received credit for the period of over-detention at sentencing. Rather, it (and *Ramos* and *Bridewell* before it) stands for the proposition that such a damages claim is defeated when the evidence demonstrates an absence of causation. The evidence at this stage of the case points to a causal link between the defendant's conduct and Mr. McFarlane's period of detention beyond 48 hours. Thus, the magistrate judge finds no basis for concluding that he is not an adequate class representative.

## Conclusion

For these reasons, and those set out in the original Report and Recommendation (Dkt. 51) and order adopting it (Dkt. 61), I respectfully recommend that the court certify the class defined at Dkt. 51, p. 19.

Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. The parties should not anticipate any extension of this deadline or any other related briefing deadlines.

IT IS SO RECOMMENDED.

Date: 7/10/2018

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the Court's ECF system