UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| BRANDON MCFARLANE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:15-cv-00176-SEB-DML |
| | ) | |
| MIKE CAROTHERS, Jackson County Sheriff, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

This cause is before the Court on the parties' cross-motions for summary judgment filed by Defendant Mike Carothers on October 10, 2018 [Dkt. 91] and Plaintiff Brandon McFarlane on October 25, 2018 [Dkt. 95], pursuant to Federal Rule of Civil Procedure 56. Mr. McFarlane brought this action on behalf of himself and the Certified class, pursuant to 42 U.S.C. § 1983, alleging that Sheriff Carothers, in his official capacity as Jackson County Sheriff, instituted unconstitutional policies resulting in Mr. McFarlane's overdetention at the Jackson County jail, in violation of his rights under the Fourth Amendment to the United States Constitution.

For the reasons detailed below, we DENY Plaintiff's Motion for Summary Judgment and also DENY Defendant's Motion for Summary Judgment.

## Background

**Procedural Background**

On July 8, 2016, Plaintiff filed a class certification motion [Dkt. 22]. We referred the motion to Magistrate Judge Debra McVicker Lynch for a report and recommendation [Dkt. 48]. Judge Lynch recommended that the proposed class be certified, as modified, [Dkt. 51], a recommendation we adopted on March 31, 2017, [Dkt. 61], over Defendant's objection [Dkt. 54].

A short time later, Sheriff Carothers moved for reconsideration of that ruling or for decertification of the class in light of *Ewell v. Toney*, 853 F.3d 911 (7th Cir. 2017) [Dkt. 72]. We granted the motion for reconsideration and remanded the class certification motion to Judge Lynch for a supplemental report and recommendation on the effect of *Ewell* [Dkt. 78]. In our remand order, we noted that the court's treatment of *Ewell* could affect the resolution of the parties then-pending cross-motions for summary judgment [Dkt. 52; 58], which had been almost entirely briefed before *Ewell* was decided [*Id.*]. We therefore administratively closed both motions for summary judgment and directed that following resolution of the remand to the magistrate judge, the parties would be permitted, if warranted, to refile their summary judgment motions to take into account the second, post-*Ewell* Report and Recommendation analysis [*Id.*]

On July 10, 2018, Judge Lynch renewed her recommendation that Plaintiff's proposed class be certified, *Ewell* notwithstanding, to which Sheriff Carothers timely objected [Dkt. 84]. We overruled Sheriff Carothers's objections and adopted the Report

and Recommendation on September 27, 2018, affirming our certification of the following class under Federal Rules of Civil Procedure 23(a) and 23(b) for damages relief only:

> Individuals who, from December 10, 2013, to the date of class certification, were incarcerated in the Jackson County, Indiana, jail, who had been arrested without a warrant, and were then held more than 48 hours following the detention and arrest, without receiving a timely judicial probable cause determination

[Dkt. 90].

On October 10, 2018, Sheriff Carothers again moved for summary judgment [Dkt. 91], limiting it to the *Monell* issue had he raised in his first motion and abandoning the question of whether Mr. McFarlane suffered any constitutional injury. Mr. McFarlane followed suit by renewing his partial motion for summary judgment on October 25, 2018, incorporating his earlier Memorandum in Support of Motion for Summary Judgment and all designated evidentiary materials [Dkt. 95]. As of the dates of their renewed motions for summary judgment, the parties had identified a total of 45 arrestees who qualified for membership in this class [Dkt. 42, at 8; Dkt. 92, at 7].

**Mr. McFarlane's Arrest and Overdetention**

Mr. McFarlane was detained at the Jackson County jail on a warrantless arrest for more than 48 hours from January 5, 2015 through January 7, 2015 [Compl. ¶ 1, Dkt. 92, at 1-2]. Specifically, Mr. McFarlane was arrested at approximately 11:57 a.m. on January 5, 2015 by a member of the Seymour Police Department on a charge of violating a protective order and contributing to the delinquency of a minor [Dkt. 53, at 2-3; Dkt. 92, at 1-2]. He was booked into the Jackson County jail that same day [Dkt. 53, at 3]. During

his period of confinement at the Jackson County jail, Mr. McFarlane was never taken before a judge or magistrate for a judicial probable cause determination, nor did a judge or magistrate review his charges prior to his release to determine if probable cause had existed for his arrest and subsequent detention [Dkt. 53, at 3]. He was released from the Jackson County jail on his own recognizance on January 7, 2015 at 3:24 p.m after 51.5 hours of detention.

**The Jackson County Sheriff's Customs and Practices**

Sheriff Carothers was aware that individuals arrested without a warrant and detained in jail were to be released within 48 hours of arrest if they did not receive judicial probable cause determinations within those first 48 hours [Dkt. 53, at 3; Dkt. 52-17, Exh. 12]. Sheriff Carothers asserts that he, in conjunction with the Courts of Jackson County, the Jackson County Prosecuting Attorney, and the various police departments in Jackson County, developed the following system of effectuating probable cause determinations for individuals arrested without a warrant [Dkt. 53, at 3; Dkt. 92, at 2; Dkt. 59-1, Carothers Aff. ¶ 3; Dkt. 59-2, Murphy Aff. ¶ 3].

When an arresting officer executes a warrantless arrest in Jackson County, he or she is responsible for providing an affidavit of probable cause to a judge, or, in limited cases, appearing before a judge to give testimony to establish probable cause [Dkt. 53, at 3; Dkt. 92, at 2; Carothers Aff. ¶ 3; Dkt. 59-2, Murphy Aff. ¶ 3]. If the judge or magistrate judge determines that probable cause existed, he or she will sign an "Order Determining Probable Cause for Warrantless Arrest," sometimes referred to as a "48 hour form," and designate the date and time of said determination [Dkt. 92, at 2; Carothers

Aff. ¶ 3; Dkt. 59-2, Murphy Aff. ¶ 3]. Copies of the order are sent to the prosecuting attorney and the jail [*Id.*]. If the form has not been received at the jail within several hours prior to the end of the relevant 48-hour period, the arresting officer is notified that his arrestee will be processed out of the jail unless the form is received within 48 hours of from the time of the arrest [Dkt. 92, at 3; Carothers Aff. ¶ 5; Murphy Aff. ¶ 5].

The jail sergeants on each shift at the Jackson County jail are instructed to monitor the timeframes for judicial probable cause determinations and are tasked with ensuring a "48 hour form" is obtained for every detainee arrested without a warrant within 48 hours of their arrests, pursuant to the date and time of the arrests in the booking log. [Dkt. 92, at 3; Carothers Aff. ¶ 6; Murphy Aff. ¶ 6]. The booking records are checked daily and those warrantless arrestees without "48 hour forms" are noted. The jail sergeants are directed to release detainees on their own recognizance promptly if a "48 hour form" is not obtained within 48 hours of the arrest [*Id.*] Relying on staff, Sheriff Carothers did not utilize any sort of computerized system by which jail personnel could "look up" which arrestees were approaching the 48-hour mark of detainment [Dkt. 53, at 3-4; Dkt. 52-16, Exh. 11].

## Analysis

### I.     Standard of Review

Summary judgment is appropriate where there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A court must grant a motion for summary judgment if it appears that no reasonable trier of fact could find in favor of the nonmovant on the basis of the designated admissible evidence. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). We neither weigh the evidence nor evaluate the credibility of witnesses, *id.* at 255, but view the facts and the reasonable inferences flowing from them in the light most favorable to the nonmovant. *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1097 (S.D. Ind. 2008).

Courts often confront cross motions for summary judgment because Rules 56(a) and (b) of the Federal Rules of Civil Procedure allow both plaintiffs and defendants to move for such relief. In such situations, courts must consider each party's motion individually to determine if that party has satisfied the summary judgment standard. *Kohl v. Ass'n. of Trial Lawyers of Am.*, 183 F.R.D. 475 (D. Md. 1998). Here, the Court has considered the parties' respective memoranda and the exhibits attached thereto and has construed all facts and drawn all reasonable inferences therefrom in the light most favorable to the respective nonmovant. *Matsushita*, 475 U.S. at 574.

**II. Discussion**

The parties each advance the following issue as controlling here and respectively argue for a resolution in their favor: Did Sheriff Carothers, acting in his official capacity, engage in a practice, procedure, or custom of detaining individuals arrested without warrants beyond 48 hours without probable cause determinations?

**A. Unconstitutionality of Mr. McFarlane's Overdetention**

The Fourth Amendment requires a prompt judicial determination of probable cause following a warrantless arrest and ensuing detention. *Gerstein v. Pugh*, 420 U.S. 103, 125 (1975). The parties do not dispute that "prompt" generally means within 48 hours of the warrantless arrest, absent the existence of extraordinary circumstances, nor

do they dispute that Mr. McFarlane and the 45 class members were detained beyond 48 hours without probable cause determinations or the presence of exigent circumstances. *Riverside v. McLaughlin*, 500 U.S. 44, 57 (1991). Accordingly, Mr. McFarlane, and the certified class, "could not, consistent with the Fourth Amendment, be continued in custody beyond 48 hours." *Haywood v. City of Chicago*, 378 F.3d 714, 717 (7th Cir. 2004). Thus, the underlying question before us here is whether these overdetentions were the result of a policy or practice, or merely random instances of staff negligence.

### B. 42 U.S.C § 1983

Section 1983 provides redress for constitutional violations committed by state actors under the color of law. *Larsen v. City of Beloit*, 130 F.3d 1278, 1282 (7th Cir. 1997). As the Supreme Court recognized in *Kentucky v. Graham*, 473 U.S. 159, 165 (1985), a suit against an officer in his official capacity "generally represent[s] only another way of pleading an action against [the] entity of which [the] officer is an agent." *Hoffman v. Knoebel*, No. 4:14-cv-00012-SEB-TAB. 2017 WL 1128534 (S.D. Ind. Mar. 24, 2017).

It is well-settled that § 1983 does not allow "for a local government to be sued . . . for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 690 (1978); *Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 468 (7th Cir. 2001). To properly maintain a § 1983 action against a local government, a plaintiff must demonstrate the existence of an unconstitutional policy. "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of

those officials whose acts may fairly be said to be those of the municipality." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403–04 (1997). Such a policy can take one of three forms: "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) an allegation that constitutional injury was caused by a person with final policy-making authority." *Rasche v. Vill. of Beecher*, 336 F.3d 588, 597 (7th Cir. 2003).

### C. Evidence of an Unconstitutional Policy

Mr. McFarlane asserts that Sheriff Carothers violated his affirmative duty, imposed by Indiana law, to ensure that pre-trial detainees receive prompt judicial probable cause determinations. *Luck v. Rovenstine*, 168 F. 3d 323, 326 (7th Cir. 1999) (holding that Ind. Code. § 36-2-13-5(a)(7) tasks sheriffs with the duty to care for their jails and its prisoners, and thus the duty to ensure that detainees arrested without warrants either receive prompt probable cause hearings or are released). Thus, he asserts that Sheriff Carothers implemented a "constitutionally deficient" policy in lieu of fulfilling his constitutional and statutory responsibilities. Mr. McFarlane also alleges the existence of an unconstitutional widespread practice at the jail that, although not authorized by written law or express policy, was so permanent or well-settled as to constitute a custom or usage with the force of law.

1. *The Existence of a "Widespread Practice"*

We are faced with limited case law defining "widespread practices" under Fourth Amendment standards. However, the Seventh Circuit's approach in discussing this legal theory in other constitutional contexts guides our analysis, as it did with the parties as evidenced in their briefs.

No "bright-line" rule defines a widespread custom or practice, but a plaintiff generally "must introduce evidence that acquiescence on the part of the policymakers was and amounted to a policy decision." *Dixon v. Cty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016); *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010). "There is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability, except that it must be more than one instance or even three." *Thomas*, 604 F.3d at 303 (*internal citations omitted*); *see also Rodriguez v. Milwaukee Cty.*, 756 F. App'x 641, 643 (7th Cir. 2019), *reh'g denied* (Mar. 25, 2019). The key inquiry here is whether the practice was the moving force behind the *Gerstein* violations. *Woodward v. Corr. Med. Servs. of Illinois, Inc.*, 368 F.3d 917, 927 (7th Cir. 2004).

For Sheriff Carothers's actions to have the "force of law," they must have been "deliberately indifferent as to [their] known or obvious consequences." *Gable v. City of Chicago*, 296 F.3d 531, 536 (7th Cir. 2002). Deliberate indifference, in the context of a widespread practice theory, means "a reasonable policymaker [would] conclude that the plainly obvious consequences of [his] actions would result in the deprivation of a federally protected right." *Id.* (*quoting Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 411 (1997); *Brock v. Casteel*, No. 1:13-CV-01577-DML, 2015 WL 3439236, at *9 (S.D.

9

Ind. May 28, 2015); *Hall v. City of Chicago*, No. 12 C 6834, 2012 WL 6727511, at *6 (N.D. Ill. Dec. 28, 2012). These consequences may be plainly obvious when one knows or should know of their existence. *Wilson v. Cook Cty.*, 742 F.3d 775, 781 (7th Cir. 2014).

Mr. McFarlane's brief confusingly intertwines his theories of "widespread practice" and "breach of affirmative constitutional duty," proclaiming that the existence of widespread practice is exhibited by Sheriff Carothers's failure to ensure that detainees who were warrantlessly arrested receive prompt judicial cause determinations, also contravening his affirmative duty to do so. Mr. McFarlane asserts that, by neglecting his constitutional obligation, Sheriff Carothers "proximately caused a deliberately indifferent policy." Such acquiescence amounts to a policy decision, and that failure to properly ensure that the detainees either received probable cause determinations within 48 hours or were released "is a form of being deliberately indifferent." As Mr. McFarlane asserts, there "clearly" was a widespread custom or practice, as evidence by the many *Gerstein* violations which occurred.

Sheriff Carothers maintains in response that, not only is there no evidence of a widespread, unspoken practice operating with the force of law, but that he in fact implemented an effective policy to ensure detainees either received probable cause determinations or were promptly released. Sheriff Carothers further argues that the actual numbers of incidents of overdetention simply do not reflect a practice so longstanding and well-settled as to imply his acquiescence in any pattern or custom of unconstitutional conduct. While he concedes that 45 *Gerstein* violations did occur, he calculates the error

10

rate as being only 1.37% of all individuals arrested without warrants and detained at the Jackson County jail during the relevant time period.

Sheriff Carothers further asserts that neither he, nor any of his staff, ever received any complaints, in any form, that detainees were being held longer than 48 hours. Sheriff Carothers acknowledges that, during discovery produced in another litigation involving allegations akin to Mr. McFarlane's which were proven to be meritless, he discovered "several"[1] prisoners who had not been promptly released after 48 hours without probable cause determinations. Sheriff Carothers insists that this was his first notice of this problem and that in response he took swift corrective action. Without any other notice of these constitutional violations, Sheriff Carothers argues he could not have consciously disregarded such a risk nor acquiesced in a pattern of unconstitutional violations. The 45 *Gerstein* violations are simply not reflective of a pattern, but rather portray merely random acts of negligence, he says.

Our analysis causes us to conclude that neither party has satisfied its respective summary judgment burden.

Mr. McFarlane effectively is arguing that, because several instances of unconstitutional conduct occurred, a widespread practice must have existed. The threshold for implicating section 1983 liability requires significantly more than that. A plaintiff must do more than simply show that the same problem has arisen many times in

---

[1] Mr. McFarlane asserts that discovery in this litigation has revealed 57 *Gerstein* violations occurring in 2012 and 2013.Whether or not that is factually correct, our concern here is limited to the policies and practices in place at the jail during the relevant class action time period.

order to establish that existence of an unconstitutional policy or practice. *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005). While repeated instances may imply a widespread practice, they do not always prove that one existed. *Id.* To support such an inference, a plaintiff must present "a sufficient causal link between the policy or custom and the constitutional deprivation." *Rodriguez*, 765 Fed. App'x at 643.

This is where Mr. McFarlane's theory falls short. Mr. McFarlane has not presented any evidence that conclusively links his class's overdetention to a widespread custom or practice at the jail. The evidence before us indicates that Sheriff Carothers adopted procedures intended to minimize the overdetention of individuals like Mr. McFarlane, but that, despite these procedures, 45 individuals still did not receive prompt probable cause determinations and were overdetained as a result. Mr. McFarlane provides no further analysis beyond asserting that this is "clearly" indicative of a widespread practice. Mr. McFarlane's proof requires more than his speculation "that [his] injuries resulted from a policy or widespread practice" to order to prevail on summary judgment; "instead, he must produce some evidence so showing." *Davenport v. Dovgin*, 545 Fed.Appx. 535, 538 (7th Cir. 2013).

We concede that the 45 *Gerstein* violations may ultimately suffice to prove the existence of an unconstitutional policy or practice; however, Mr. McFarlane has not yet satisfied his obligation to weave these instances together into a coherent, cognizable policy. *Phelan v. Cook Cnty.*, 463 F. 3d 773, 790 (7th Cir. 2006). We are left with only Mr. McFarlane's speculation, based on the numerous incidents, that Sheriff Carothers

engaged in a widespread unconstitutional practice or custom. Thus, his request for summary judgment must be denied.

As for Sheriff Carothers's reliance on what he calculates to be an insignificantly low percentage of violations, the existence of a widespread practice is not necessarily a matter of only arithmetic. No identifiable number or percentage provides a measure in determining "random acts" from "widespread custom." *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d at 303. Having concluded that Mr. McFarlane failed to meet his burden of establishing how these discrete instances were translated to a widespread practice, we also are unable to hold that Sheriff Carothers has shown that these 45 *Gerstein* violations cannot be properly viewed as evidence of an unconstitutional policy or practice. While this is not a significant number of violations in a mathematical sense, it is certainly more than the minimally required "one or three instances" discussed in the case law as is necessary to establish a widespread custom.[2]

---

[2] We have doubts (or at least questions) regarding Sheriff Carothers's statistical analysis. Sheriff Carothers has provided no evidence explaining the accuracy of his numbers, leaving us to rely on the presentation in his briefs. Sheriff Carothers's averment that only "1.37%" of detainees had their rights violated cannot be accurate: the timeframes by which Sheriff Carothers measures the number of detainees who rights were violated does not match the timeframe by which he measures the number of detainees whose rights were purportedly not violated: the 45 undisputed *Gerstein* violations occurred from January 2014 to August 2015, whereas the total number of inmates who Sheriff Carothers asserts were arrested without warrants reflect the period of December 10, 2013 to December 31, 2016–a timeframe exceeding the former by 17 months. This broadened timeframe may serve as a loose reflection of the arrests that occurred during the relevant class action period, but it does not provide an accurate portrayal of the ratio of constitutional to unconstitutional actions during the period when most of the problems appear to have occurred, to wit, between January 2014 to August 2015. More concerning is Sheriff Carothers's failure to present evidence allowing us to indisputably conclude that the Fourth Amendment rights of the other detainees were not undermined. As Mr. McFarlane explains, as of the time of briefing, discovery was still proceeding and the parties had not officially determined who else may also qualify for inclusion the class.

Sheriff Carothers asserts that, in any event he had no actual knowledge of any of the *Gerstein* violations. For this, he cites the lack of complaints received at the jail without which he says, he did not and could not have known of a problem.[3] However, the notice requirement, for purposes of determining "conscious disregard" in the context of deliberate indifference necessary to establish a widespread practice or custom is not limited to consideration only of Sheriff Carothers's actual knowledge. *King v. Kramer*, 680 F.3d 1013, 1021 (7th Cir. 2012); *Elliott v. Sheriff of Rush Cty., Ind.*, 686 F. Supp. 2d 840, 867 (S.D. Ind. 2010). Nor is an absence of complaints dispositive of this issue. *See Hoffman v. Knoebel*, No. 4:14-cv-00012-SEB-TAB, 2017 WL 1128534 (Mar. 24, 2017); *Brock v. Casteel*, No. 1:13-CV-01577-DML, 2015 WL 3439236, at *10 (S.D. Ind. May 28, 2015). In cases involving a failure to train, the Supreme Court has held that if a program does not prevent constitutional violations, policymakers may be placed on notice that a new program is necessary. *Brown*, 520 U.S. at 403–04 (1997). In such situations, "their continued adherence to an approach they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard of the consequences, i.e., the deliberate indifference for liability." *Id.*

Even if we were to accept that Sheriff Carothers's established procedures were in place and executed exactly as he avers, the uncontroverted fact is that his program did not prevent a certain number of violations. Whether he should have recognized that dozens of

---

[3] These assertions are based on the statements and knowledge of Sheriff Carothers's and Jail Commander Charles Murphy's words. No documents or other evidentiary support substantiate their claims. To accept these statements as true requires a credibility determination, which is beyond the purview of summary judgment.

14

individuals were being detained longer than 48 hours without probable cause determinations, placing him on notice that his procedures were flawed and thereby establishing a conscious disregard of its consequences on his part, is a factual question not amenable to summary judgment. *Brock v. Casteel*, No. 1:13-cv-01577-DML-TWP, 2015 WL 3439236, at *12 (S.D. Ind. 2015) (denying defendant's motion for summary judgment on Fourth Amendment claim because a reasonable jury could conclude that defendant was deliberately indifferent when he improperly detained plaintiff for six days) (*citing Armstrong v. Squadrito*, 152 F.3d 564, 577 (7th Cir. 1998). ("[T]he question of whether the defendants' conduct constituted deliberate indifference is a classic issue for the fact finder."). Sheriff Carothers has not put forth sufficient evidence to foreclose a reasonable jury from finding that he either had constructive knowledge or should have known of his procedures' imperfections. Sheriff Carothers thus has not shown that a jury would be required to find that he did not act with deliberate indifference to the constitutional violations occurring at the Jackson County jail where certain individuals were being detained too long without probable cause findings. *See Brock,* 2015 WL 3439236, at *11-12.

2. *Sheriff Carothers's Constitutional Duties*

Sheriff Carothers had an affirmative, independent duty, imposed by Indiana law and recognized by the Seventh Circuit, to ensure that those detainees who were arrested without warrants received prompt probable cause determinations, and to release those who did not receive such determinations within 48 hours. Ind. Code. § 36-2-13-5(a)(7); *Luck*, 168 F.3d at 326. Sheriff Carothers cannot "shrug off his federal constitutional

15

responsibilities;" he is accountable for the 45 *Gerstein* violations. *Hoffman*, 2017 WL 1128534, at *5 (*quoting Luck*, 168 F.3d at 326). Beyond the issue of deliberate indifference under a theory of widespread practice, he had a duty to adopt and enforce procedures to ensure that detainees arrested without warrants received probable cause determinations with 48 hours. That is the crux of Mr. McFarlane's claim: 45 times within a 19 month period, the policy failed to prevent constitutional violations.

Despite devoting a substantial portion of his arguments in support of summary judgment to this issue of whether there was a widespread practice of overdetention, Sheriff Carothers sidesteps the fact that he did not fulfill his constitutional duty to protect against overdetentions. It is not enough that he had no actual knowledge of constitutional violations in his jail, thus negating a "widespread custom." Clearly Sheriff Carothers had a constitutional duty to protect against the overdetention of arrestees without warrants; what constitutes a breach of said duty is a less obvious issue.[4] Perhaps a more effective system of written or computer-based record keeping; many possibilities come to mind.

Mr. McFarlane's claims call into question the constitutional sufficiency of the jail's system and procedures, "show[ing] a failure to develop rules and procedures to prevent over-detentions when there is an absolute constitutional duty in place." Whether

---

[4] The parties direct us to two cases discussing this duty and we identified two more: *Luck v. Rovenstine*, 168 F.3d 323 (7th Cir. 1999); *Coleman v. Frantz*, 754 F.2d 719, 722 (7th Cir. 1985); *Hoffman v. Knoebel*, No. 4:14-cv-00012-SEB-TAB, 2017 WL 1128534 (S.D. Mar. 24, 2017); Bickel v. Sheriff of Whitley Cty., No. 1:08-CV-102-TS, 2010 WL 1258165, at *2 (N.D. Ind. Mar. 26, 2010). These cases are beneficial to the Court's understanding of this duty and its outer boundaries, but they do not illuminate the contours of what is necessary for a sheriff to fulfill this duty.

and to what extent Sheriff Carothers's breached this duty is a factual issue that cannot be resolved on summary judgment. *Mangold ex rel. Mangold v. Indiana Dep't of Nat. Res.*, 756 N.E.2d 970, 975 (Ind. 2001); *Indian Trucking v. Harber*, 752 N.E.2d 168, 172 (Ind. Ct. App. 2001).

## **Conclusion**

For the reasons detailed above, Plaintiff Brandon McFarlane's Motion for Partial Summary Judgment is <u>DENIED</u>. Defendant Mike Carothers's Motion for Summary Judgment is also <u>DENIED</u>. The case shall proceed accordingly.

IT IS SO ORDERED.

Date: _____9/30/2019_____   _____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Christopher Carson Myers
CHRISTOPHER C. MYERS & ASSOCIATES
cmyers@myers-law.com

Pamela G. Schneeman
STEPHENSON MOROW & SEMLER
pschneeman@stephlaw.com

James S. Stephenson
STEPHENSON MOROW & SEMLER
jstephenson@stephlaw.com